UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LOUIS BERNARD PLACIDE,

                                 Plaintiff,                Case No. 7:20-cv-2277

    -against-

RULESS PIERRE,                             <u>COMPLAINT</u>
R. PIERRE CONSULTING GROUP, LLC
and KARLYNE FEQUIERE PIERRE,

                                 Defendants.       JURY TRIAL DEMANDED


-------------------------------------------------------------------X

            Plaintiff, Louis Bernard Placide ("Plaintiff"), by his attorneys, The Law Offices of Steven C. Bagwin, as and for his complaint (the "Complaint") against defendants Ruless Pierre ("R-Pierre"), Karlyne Fequiere Pierre ("K-Pierre" and collectively with R-Pierre the "Pierres") and R. Pierre Consulting Group, LLC ("RPCG" and collectively with the Pierres the "Defendants") respectfully alleges as follows:


## NATURE OF ACTION

1.    This action arises from Defendants' scheme to defraud the Plaintiff and others into investing certain sums in their investment club promising high returns and using investors' money to make occasional distributions to investors to further induce investors to reinvest their money and to induce new investors to invest in the scheme.

2.    Plaintiff seeks to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.   In addition to

Plaintiff's federal claims Plaintiff also seeks to recover damages for fraud, breach of promissory notes, unjust enrichment and violations of New York General Business Law §349.

## JURISDICTION AND VENUE

3.      The federal claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

5.      The Plaintiff's state law claims arise out of the same case or controversy as his federal law claims, as all claims in this action arise out of a common nucleus of operative facts. Thus, this Court also has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Judicial District pursuant to and 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims arose in this District. Venue is also proper in this District pursuant to 15 U.S.C §78aa and 28 U.S.C § 1391(b)(1) since the individual defendants reside in this Judicial District and RPCG's principal place of business is located in this Judicial District.

7.      The Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

## THE PARTIES

8.      Plaintiff is an individual and resident of the State of New York with an address at 22 Columbus Ave., Apt C5, Village of Spring Valley, County of Rockland, State of New York.

9.     R-Pierre and K-Pierre are individuals and residents of the State of New York with an address at 14 Versailles Way, Hamlet of Nanuet, County of Rockland, State of New York.

10.     K-Pierre is the wife of R-Pierre.

11.     RPCG is a New York Limited Liability Company duly formed on November 22, 2017 with its office and principal place of business located at the Pierres' residence at 14 Versailles Way, Hamlet of Nanuet, County of Rockland, State of New York.

12.     RPCG was and at all times hereinafter mentioned was and still is doing business as Amongst Friends Investment Group ("Amongst Friends")

13.     Upon information and belief R-Pierre is the sole member of RPCG.


## NATURE OF THE DEFENDANTS' SCHEME

14.     Upon information and belief, Defendants fraudulently obtained millions of dollars from investors promising impossibly high returns from securities trading and, instead, used stolen money and new investor money to make occasional distributions and to induce investors to reinvest their money with the Defendants.

15.     Upon information and belief, from at least March 2017, R-Pierre, with the knowledge and consent of K-Pierre, ran the investment club called Amongst Friends.

16.     Upon information and belief, investors in Amongst Friends were largely Haitian New Yorkers.

17.     In or about 2017, R-Pierre began issuing Investment Loan Promissory Notes to investors using the Amongst Friends name.

18.     The investors in Amongst Friends received Investment Loan Promissory Notes, promising rates of return of at least 20% every 60 days (10% monthly).

19.     While the terms of the Investment Loan Promissory Notes varied, they were similar in several key aspects: (1) each contained high rates of return ranging from 20% interest every 60 days to as high as 40% interest every 60 days.  (While most of the Investment Loan Promissory Notes used the term "interest," some stated "interest/profit sharing."); and (2) all the Investment Loan Promissory Notes lacked maturity dates but instead indicated that they were to be repaid "upon dissolution" or within 30 days of the investor's "request to exit the group."

20.     Upon information and belief, the Investment Loan Promissory Notes stated, among other things, that "[the] purpose of this investment is to fund the Planet Wings-Fast Food Franchise purchase."

21.     Upon information and belief, R-Pierre orally represented to investors that he personally guaranteed the return of their principal. Some of the Investment Loan Promissory Notes explicitly stated that the investment was personally guaranteed by R-Pierre and several purported to be collateralized by a rental property that he owns (with his wife K-Pierre) in Nyack, New York.

22.     Upon information and belief, Defendants raised in excess of $2,000,000 from at least 100 investors, including the Plaintiff, in the Amongst Friends Investment Loan Promissory Notes scheme.

23.     Upon information and belief, at some point before 2018 a friend of the Pierres, who was also an Amongst Friends investor, told the Pierres that he was interested in selling three Planet Wings franchises.

24.     Upon information and belief, beginning in or about November 2018 and continuing through at least June 2019, the Pierres, using a document titled "Investment Loan Promissory Note," offered investors, including the Plaintiff, the opportunity to fund the Planet

Wings franchise purchase.

25.    Upon information and belief, the Investment Loan Promissory Notes given by Defendants promised a fixed interest of rate return of 20% every 60 days (10% monthly).

26.    Upon information and belief, the Pierres deposited the investor money into bank accounts in the name of RPCG.

27.    Upon information and belief, the Pierres used a portion of the investors' money to pay Amongst Friends investment returns.

28.    Upon information and belief, on or before January 2019, the Defendants received financial statements for each of the three Planet Wings franchise locations, which financial statements showed minimal profits, if any, over the prior several years.

29.    Upon information and belief, the financial statements for the Planet Wings franchise location in Orangeburg, New York showed profits of $11,790 in 2015, $30,823 in 2016, and only $3,662 in 2017.

30.    Upon information and belief, bank records for the Orangeburg Planet Wings franchise location reveal that that location had not generated sufficient funds to repay investors the promised rates of return made by the Defendants.

31.    Upon information and belief, Defendants continued to issue Investment Loan Promissory Notes in order to fund the Planet Wings fast food franchise purchases after receiving these financial statements even though Defendants did not have a reasonable basis to believe the profits from any of the three Planet Wings fast food franchises could pay the returns promised to their investors.

32.    Upon information and belief, in or about May 1, 2019 Defendants purchased the Orangeburg Planet Wings franchise location for $50,000.

33.     Upon information and belief, Defendants never purchased the other two Planet Wings franchise locations as promised and represented to their investors.

34.     Upon information and belief, during the period November 2018 through June 2019, Defendants raised at least $375,000 for the purchase of Planet Wings fast food franchises by duping approximately 19 investors, including the Plaintiff, to invest with them.

35.     The Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails and wires, in connection with the transactions, acts, practices, and courses of business alleged herein.

### FACTUAL BACKGROUND AND THE SCHEME <br> AS IT PERTAINS TO THE PLAINTIFF

36.     Plaintiff was born in Port-Au-Prince Haiti and is 54 years old.

37.     Plaintiff attended high school in Haiti and after completing high school he attended Inajhei University but did not receive his degree.

38.     Plaintiff immigrated to the United States in June 1998 and is currently in the process of obtaining his Lawful Permanent Status.

39.     Although Plaintiff speaks English, he is not fluent in English, and it is not his primary language.  Plaintiff's primary language is Creole and his secondary language is French.

40.     Plaintiff is currently married and has two children from his marriage.  Plaintiff also has 4 children from a prior relationship. Plaintiff's children range in age from 17 to 20.

41.     After immigrating to the United States Plaintiff has been employed as a taxi driver and as a physical therapy assistant

42.     Plaintiff has had limited investment experience in the past and as such is an unsophisticated investor.

43.     In or about April 2019 the Plaintiff was introduced to R-Pierre by a former co-worker and friend, Emmanuella Mathiew.   Ms. Mathiew told the Plaintiff that R-Pierre was offering great investment opportunities to the Haitian community to "make a lot of money."

44.     On April 22, 2019, at approximately 12:30 p.m., Plaintiff met the Pierres at their home located at 14 Versailles Way, Nanuet New York (the "Pierre Home").

45.     In order to give Plaintiff a level of comfort and credibility in his dealings with the Defendants, R-Pierre introduced K-Pierre as a successful lawyer, and as such the Plaintiff understood K-Pierre to be a part of the investment scheme.

46.     At the April 22, 2019 meeting, R-Pierre orally represented to the Plaintiff that:  he owned Planet Wings franchises; that the Defendants needed more investors and investor money so that they could purchase more Planet Wings franchises; that the Plaintiff's investment with the Defendants would be a good investment; that the Plaintiff's money would be safe with the Defendants; that the Plaintiff's money would be in good hands; that the Plaintiff's money would be completely safe because the Pierres' owned two homes so that if something happened to Plaintiff's investment, Plaintiff would be repaid his investment from the houses and therefore, Plaintiff's investment was secured; and that for each $30,000 invested by the Plaintiff with the Defendants, Plaintiff would receive $6,000 every sixty days from the Defendants.

47.     At the conclusion of the April 22, 2019 meeting and in reliance upon the representations of the Defendants, Plaintiff gave the Defendants the sum of $30,000, in cash, to be invested in Planet Wings franchises.

48.     As evidence of and security for the Plaintiff's investment of $30,000 the Defendants provided the Plaintiff with an Investment Loan Promissory Note dated April 22,

2019. This note was drafted by the Defendants and signed by both R-Pierre and the Plaintiff. A copy of the April 22, 2019 Investment Loan Promissory Note is attached hereto as Exhibit 1.

49.     The Investment Loan Promissory Note set forth among other things that 1) it is a legally binding contract; 2) the investor (Plaintiff) would be paid the full principal amount plus interest at the rate of 10% monthly (within 60 days of the initial investment date); and 3) was personally guaranteed by R-Pierre.

50.     Further, as Plaintiff was leaving the Pierre home R-Pierre asked Plaintiff to let him know if he knew of anybody else who was looking for an investment opportunity and who wanted to "make a lot of money."

51.     The next morning, April 23, 2019, Plaintiff received a telephone call from R-Pierre on his cell phone. The Plaintiff was unable to answer the call but did return R-Pierre's call at approximately 1:30 p.m. that day.   During the phone conversation and with regard to the transaction the day before, R-Pierre stated that "everything was fine, and that the business was doing well."   R-Pierre then encouraged the Plaintiff to make an additional investment with the Defendants.

52.     Four days later, on April 27, 2019, at the request and insistence of R-Pierre, the Plaintiff went back to the Pierre home and met the Pierres again.   At that time R-Pierre made the same promises and representations to the Plaintiff that he made to the Plaintiff on April 22, 2019 and asked the Plaintiff to make an additional investment with the Defendants.   In reliance upon the continued promises and representations made by R-Pierre the Plaintiff gave the Defendants an additional $30,000 to be invested in Planet Wings franchises.   A second Investment Loan Promissory Note dated April 27, 2019 was drafted by the Defendants and carried the same terms as the first Investment Loan Promissory Note.   The note was signed by both R-Pierre and the

Plaintiff. A copy of the April 27, 2019 Investment Loan Promissory Note is attached hereto as Exhibit 2.

53.     Thereafter, R-Pierre continued to reassure the Plaintiff that the Plaintiff was in good hands; that he liked the way the Plaintiff was acting; and that he wanted more investors like the Plaintiff so that the Defendants could purchase additional Planet Wings franchises.

54.     On June 5, 2019, R-Pierre texted the Plaintiff requesting that the Plaintiff call him. The Plaintiff called R-Pierre that day. During the telephone conversation, R-Pierre stated that he had an emergency and wanted the Plaintiff's help to find people to invest money with the Defendants. He also asked the Plaintiff for more money for the Planet Wings franchise.

55.     On June 6, 2019 and at the invitation of R-Pierre, the Plaintiff went to the Pierre Home once again and gave R-Pierre an additional $15,000. At that time R-Pierre thanked the Plaintiff and stated, "You are not going to regret what you're doing for me."

56.     A third Investment Loan Promissory Note dated June 6, 2019 was drafted by the Defendants and carried the same terms and condition as the April 22, 2019 and the April 27, 2019 Investment Promissory Notes. Again, the note was signed by R-Pierre and the Plaintiff. A copy of the June 6, 2019 Investment Loan Promissory Note is attached hereto as Exhibit 3.

57.     Thereafter, and in accordance with the Investment Loan Promissory Notes, Defendants made a total of 4 payments of interest on the April 22, 2019 and April 27, 2019 notes to the Plaintiff. Specifically, Defendants paid the Plaintiff $6,000 on June 22, 2019, $6,000 on June 27, 2019, $6000 on August 22, 2019 and $6,000 on August 27, 2019. No interest was ever paid to the Plaintiff by the Defendants on the June 6, 2019 Investment Loan Promissory Note.

58.     In early September 2019 R-Pierre called the Plaintiff seeking a personal loan from the Plaintiff claiming he needed it to resolve a family dispute.  R-Pierre promised to pay interest to the Plaintiff of 20% per month until the loan was repaid.

59.     On September 13, 2019, the Plaintiff gave R-Pierre the sum of $10,000 as and for a personal loan.  A promissory note drafted by R-Pierre and was signed by R-Pierre and the Plaintiff. (the "Personal Promissory Note").  A copy of the September 13, 2019 Personal Promissory Note is attached hereto as Exhibit 4.

60.     In furtherance of the Defendants' scheme, R-Pierre sent text messages from his cell phone (number 516-662-9358) to the Plaintiff on the following dates: April 29, 2019, June 6, 2019, August 7, 2019, August 8, 2019, August 23, 2019, August 21, 2019, September 10, 2019, September 11. 2019, September 12, 2029, September 13, 2019, September 17, 2019, September 18, 2019 and September 22, 2019.

61.     Since September 13, 2019 and to date, R-Pierre has made no further payment, whatsoever, on the Investment Loan Promissory Notes given to the Plaintiff or on the Personal Promissory Note given to the Plaintiff.

62.     On December 4, 2019, pursuant to the Investment Loan Promissory Notes and Personal Promissory Note, a demand letter was sent to RPCG and R-Pierre by certified mail and 1st class mail.  No response to the demand letter was ever received.  A copy of the demand letter is attached hereto as Exhibit 5.

63.     At this time, the sum of $30,000 in principal plus $18,000 interest is due and owing on the April 22, 2019 Investment Loan Promissory Note; the sum of $30,000 in principal plus $18,000 interest is due and owing on the April 27, 2019 Investment Loan Promissory Note; the sum of $15,000 in principal plus $12,000 interest is due and owing on the June 6, 2019

Investment Loan Promissory Note; and the sum of $10,000 in principal plus $10,000 interest is due and owing on the September 13, 2019 Personal Promissory Note.

64.    Interest continues to accrue monthly on these obligations.

## ADDITIONAL FACTS RELATED TO THE DEFENDANTS' SCHEME

65.    On November 4, 2019, the United States Attorney's office for the Southern District of New York filed an indictment (Case No. 1:19-cr-0783) against R-Pierre alleging, among other things, criminal acts of securities fraud and wire fraud based on similar facts and circumstances as set forth herein.

66.    On November 6, 2019, the Security and Exchange Commission filed a complaint (Case No. 1:19-cv-10299) against R-Pierre and RPCG alleging securities fraud violations based on similar facts and circumstances as set forth herein.

## FIRST CAUSE OF ACTION
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5)

67.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66 as if set forth fully herein.

68.    Defendants directly or indirectly, knowing or recklessly, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of a material fact or omitted to state a material fact, necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon persons, in connection with the purchase or sale of securities.

69.     By engaging in the conduct alleged above, the Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rules 10b-5-(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b) and (c)].

70.     As a consequence of the actions of the Defendants, the Plaintiff has suffered damages in an amount to be determined at the trial of this action but believed to be in excess of $123,000.

### SECOND CAUSE OF ACTION
**(Fraud in the Inducement)**

71.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70 as if set forth fully herein.

72.     As set forth above, on multiple occasions between April 2019 and September 2019, R-Pierre, on behalf of the Defendants, represented to Plaintiff that the Defendants needed more investors and investor money so that they could purchase more Planet Wings franchises; that the Plaintiff's investment with the Defendants would be a good investment; that the Plaintiff's money would be safe with the Defendants; that the Plaintiff's money would be in good hands; that the Plaintiff's money would be completely safe because Pierres owned two homes so that if something happened to Plaintiff's investment Plaintiff would be repaid his investment from the houses and therefore Plaintiff's investment was secured; and that for each $30,000 invested by the Plaintiff with the Defendants, Plaintiff would receive $6,000 every sixty days from the Defendants.

73.     Such statements were intentionally made by R-Pierre on behalf of the Defendants to induce the Plaintiff to invest in the Defendants' Amongst Friends scheme.

74.     In reliance on these statements the Plaintiff invested with the Defendants $30,000 on April 22, 2019, $30,000 on April 27, 2019, $15,000 on June 6, 2019 and a personal loan to R-Pierre of $10,000 on September 13, 2019.

75.     Such statements were intentionally made by R-Pierre to induce the Plaintiff into investing in the Defendants' scheme.

76.     R-Pierre knew the representations made by him were false when made and that R-Pierre and the Defendants had no intention of complying with his representations.

77.     R-Pierre knew and intended that the Plaintiff would rely upon his representations.

78.     Such representations were material to the Plaintiff's decision to invest in the Defendants' scheme.

79.     R- Pierre's conduct on behalf of himself and the Defendants as set forth herein constituted fraud against the Plaintiff.  By virtue of the fraudulent conduct of the Defendants, the Plaintiff has been damaged in an amount to be established at the trial of this action but believed to be in excess of $143,000.

80.     In addition, Defendants' conduct was intentional, wanton, malicious, extreme and outrageous so that punitive damages should be awarded to the Plaintiff in an amount sufficient to punish the Defendants for their conduct and to deter Defendants and others from engaging in such conduct in the future, said amount of punitive damages to be in the sum of $1,500,000.

## THIRD CAUSE OF ACTION
### (Fraud by Omission)

81.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 80 as if set forth fully herein.

82.     Upon information and belief, prior to R-Pierre's representations to the Plaintiff, Defendants had received financial statements for the Planet Wings franchise locations which financial statements showed minimal profits.

83.     Even though Defendants did not have a reasonable basis to believe the profits from the franchise locations could pay the interest rates they promised the Plaintiff, Defendants continued to solicit money from and issue Investment Loan Promissory Notes to the Plaintiff.

84.     At no time did the Defendants provide the financial statements in their possession to the Plaintiff.

85.     At no time did the Defendants disclose to the Plaintiff that the franchise locations only produced minimal profits and could not provide sufficient returns to pay the interest on the Plaintiff's Investment Loan Promissory Notes or repay the principal.

86.     Defendants had a duty to timely and fully disclose the foregoing facts to the Plaintiff.

87.     Defendants intentionally and fraudulently concealed, withheld and omitted this financial information from the Plaintiff.

88.     Had Defendants disclosed these facts, the Plaintiff would not have invested in the Defendants' scheme.

89.     Defendants' conduct as set forth herein constituted fraud in the omission against the Plaintiff.  By virtue of the Defendants' fraudulent conduct, the Plaintiff has been damaged in an amount to be established at the trial of this action but believed to be in excess of $143,000.

90.     In addition, Defendants' conduct was intentional, wanton, malicious, extreme and outrageous so that punitive damages should be awarded to the Plaintiff in an amount sufficient to

punish the Defendants for their conduct and to deter the Defendants and others from engaging in such conduct in the future, said amount of punitive damages to be in the sum of $1,500,000

## FOURTH CAUSE OF ACTION
### (Action on the Investment Loan Promissory Notes)

91.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 90 as if set forth fully herein.

92.    The Plaintiff invested with the Defendants the sum of $30,000 on April 22, 2019, the sum of $30,000 on April 27, 2019 and the sum of $15,000 on June 6, 2019 each by way of an Investment Loan Promissory Notes executed by R-Pierre on behalf of the RPCG.

93.    Each Investment Loan Promissory Note set forth, among other things, that 1) it was legally binding; 2) the Plaintiff would be paid the full principal amount plus interest at the rate of 10% monthly (within 60 days of the initial investment date); and 3) was personally guaranteed by Pierre.

94.    In accordance with the Investment Loan Promissory Notes, Defendants made 2 interest payments on each of the April 22, 2019 and April 27, 2019 Investment Loan Promissory Notes.  Specifically, Defendants made interest payments to the Plaintiff of $6,000 on June 22, 2019 and of $6,000 on the April 22, 2029 Investment Loan Promissory Note and of $6,000 on June 27, 2019, $6000 and $6,000 on August 27, 2019 on the April 27, 2019 Investment Loan Promissory Note.  No interest payments were made thereafter to the Plaintiff on the April 22, 2019 and April 27, 2019 Investment Loan Promissory Notes.

95.    No interest was ever paid to the Plaintiff on the June 6, 2019 Investment Loan Promissory Note.

96.     On December 4, 2019 and pursuant to the Investment Loan Promissory Notes, Plaintiff, by counsel, sent a demand letter to RPCG and R-Pierre 1) notifying RPCG and Pierre of Plaintiff's exercise of his right of full withdrawal from the investments on 30 days' notice; 2) demanding return of his principal invested in the amount of $75,000; and 3) demanding the interest due and owing to the Plaintiff at that time.

97.     Although more than 30 days has elapsed, no response has been received.

98.     Accordingly, Plaintiff is entitled to repayment from the Defendants of his entire principal of $75,000 plus accrued interest on the April 22, 2019 and April 27, 2019 Investment Loan Promissory Notes from August 2019, and accrued interest on the June 6, 2019 Investment Loan Promissory Note from June 2019.

## FIFTH CAUSE OF ACTION
### (Action on the Personal Promissory Note)

99.     Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 98 as if set forth fully herein.

100.    On September 13, 2019 the Plaintiff made a personal loan to R-Pierre in the amount of $10,000.  R-Pierre executed the Personal Promissory Note evidencing the loan.

101.    The Personal Promissory Note was payable on demand and carried an interest rate of 20% per month until the loan amount was repaid in full.

102.    No payments were ever made on the September 13, 2019 Personal Promissory Note.

103.    On December 4, 2019 and pursuant to the Personal Promissory Note, Plaintiff, by counsel, sent a demand letter to R-Pierre demanding repayment within 30 days and payment of the interest due and owing at that time.

104.    Although more than 30 days has elapsed, no response has been received.

105.    At this time, $10,000 principal plus interest from September 2019 is due and owing on the September 13, 2019 Personal Promissory Note.

106.    Accordingly, Plaintiff is entitled to repayment of his principal of $10,000 plus accrued interest from September 13, 2019.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

107.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 106 as if set forth fully herein.

108.    The Plaintiff invested $75,000 with the Defendants to be invested in a Planet Wings franchises.

109.    The Defendant never invested the money given to them by the Plaintiff in Planet Wings franchises.

110.    As a consequence, the Defendants were unjustly enriched at the expense of the Plaintiff.

111.    It is against equity and good conscious to permit the Defendants to retain the monies given to them by the Plaintiff.

112.    Accordingly, Plaintiff is entitled to repayment of the $75,000 he gave to the Defendants, plus interest as the court may determine.

## SEVENTH CAUSE OF ACTION
### (Violation of New York General Business Law §349)

113.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 112 as if set forth fully herein.

114.   On the basis of the foregoing, Defendants have engaged in consumer-oriented conduct which was willfully and knowingly deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of §349 of the New York General Business Law.

115.   Defendants' misleading and deceptive statements and representations of fact were directed to consumers one of whom was the Plaintiff.

116.   Defendants' misleading and deceptive statements of fact were likely to mislead a reasonable consumer into acting reasonably under the circumstances.

117.   Defendants' false, misleading and deceptive statements of fact and omissions have resulted in consumer injury or harm to the public interest.

118.   As a result of the Defendants' unfair and deceptive business practices, Plaintiff has suffered and continues to suffer damages in an amount to be determined at the trial of this action.

119.   In addition, and as a consequence of Defendants' violation of N.Y. General Business Law §349, Plaintiff is entitled to treble damages as provided in the statute in an amount up to $1,000.00, and reasonable attorney's fees.

**WHEREFORE,** plaintiff Louis Bernard Placide demands judgment against Defendants as follows:

a.   On the first cause of action damages in an amount of $123,000 plus interest pursuant to the Investment Loan Promissory Notes;

b.   On the second cause of action damages in an amount to be determined at the trial of this action but believed to be in excess of $143,000 plus interest pursuant to the Investment

18

Loan Promissory Notes and Personal Promissory Notes together with punitive damages in the sum of $1,500,000;

c.  On the third cause of action damages in an amount to be determined at the trial of this action but believed to be in excess of $143,00 plus interest pursuant to the Investment Loan Promissory Notes and Personal Promissory Notes together with punitive damages in the sum of $1,500,000;

d.  On the fourth cause of action damages in an amount to be determined at the trial of this action but believed to be in excess of $75,000 plus interest pursuant to the Investment Loan Promissory Notes;

e.  On the fifth cause of action damages in an amount to be determined at the trial of this action but believed to be in excess of $10,000 plus interest pursuant to the Personal Promissory Note;

f.  On the sixth cause of action damages in an amount of $75,000 plus interest;

g.  On the seventh cause of action damages in an amount to be determined at the trial of this action plus treble damages and reasonable attorney's fees; and

h.  Granting such other and further relief as to this Court seems just and proper including, but not limited to, the costs, disbursements, expenses and attorney's fees of this action.


**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: Hawthorne, NY
      February 28, 2020

Respectfully submitted,

Steven C. Bagwin. (SCB-7342)
The Law Office of Steven C. Bagwin
Attorney for Plaintiff
245 Saw Mill River Road
Hawthorne, New York 10530
914-747-7070
sbagwin@grlawpc.com

## **VERIFICATION**

STATE OF NEW YORK, COUNTY OF ROCKLAND, ss.

I, Louis Bernard Placide, have read the foregoing Complaint and know the contents thereof. The contents of the Complaint are true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_Louis B. Placide_
_____
Louis Bernard Placide

Subscribed and sworn to before me
on the _28_ day of February, 2020

_____
Notary Public

THOMAS SASSONE
Notary Public, State of New York
No. 5007941
Qualified in Rockland County
Commission Expires Feb. 8, 20 _23_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**                              **7:20-cv-2277**

## LOUIS BERNARD PLACIDE

### - against -

## RULESS PIERRE,, R. PIERRE CONSULTING GROUP, LLC
## and KARLYNE FEQUIERE PIERRE

# COMPLAINT AND JURY DEMAND

Law Office of Steven C. Bagwin
Attorney at Law
*Attorneys for:*

## LOUIS BERNARD PLACIDE

*Office and Post Office Address, Telephone*
245 Saw Mill River Road
Hawthorne, NY 10532
(914) 747-7070

To:

Attorney(s) for:

Service of a copy of the within                              is hereby admitted.

Dated,

_____
*Attorney(s) for*

Sir: - Please take notice
☐ NOTICE OF ENTRY
that the within is a *(certified)* true copy of a
duly entered in the office of the clerk of the within named court on                    2020

☐ NOTICE OF SETTLEMENT
that an order                              of which the within is a true copy will be presented for
settlement to the HON.                              one of the judges of the
within named court on                    2020     at                    .

Dated,                                             Yours, etc.

                                                   Steven C. Bagwin
                                                   Attorney at Law
                                                   *Attorneys for:*
To:

Attorney(s) for                                    *Office and Post Office Address*
                                                   245 Saw Mill River Road
                                                   Hawthorne, NY 10532
                                                   (914) 747-7070